No. 25-30321

---

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

ARCHER WESTERN CONTRACTORS, LLC
*Plaintiff-Appellee*
v.
MCDONNEL GROUP, LLC
*Defendant-Appellant*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA,
CIVIL ACTION NO. 2:22-CV-05323-WBV-MBN,
HONORABLE WENDY B. VITTER PRESIDING

---

## ORIGINAL BRIEF OF DEFENDANT-APPELLANT,
## THE MCDONNEL GROUP, LLC

---

RANDALL A. SMITH (No. 2117)
DYLAN T. LEACH (No. 35879)
ANDRE M. STOLIER (No. 40063)
SMITH & FAWER, LLC
201 St. Charles Avenue, Suite 3702
New Orleans, Louisiana 70170
Telephone: (504) 525-2200
Facsimile:  (504) 525-2205

*Counsel for Defendant-Appellant,*
*The McDonnel Group, LLC*

## CERTIFICATE OF INTERESTED PERSONS

Case No. 25-30321

———————————————————————

ARCHER WESTERN CONTRACTORS, LLC
v.
MCDONNEL GROUP, LLC

———————————————————————

The undersigned certify that the following listed persons and entities, as described in United States Court of Appeals for the Fifth Circuit Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.    **DEFENDANT-APPELLANT: The McDonnel Group, LLC**

The McDonnel Group, LLC ("TMG") is a Louisiana limited liability company organized, existing under the laws of, and maintaining its principal place of business within the State of Louisiana. The members of TMG are all natural persons who are citizens of Louisiana. The members of TMG are: TMG Investments, LLC; BAM Ventures, LLC; TVM Ventures, LLC; KIMMLE, LLC; MCG Construction, LLC; Jason Zuckerman, Architect, LLC; LPKM Investments, LLC; and Marse Consulting and Investments, LLC. The sole member of TMG Investments, LLC and BAM Ventures, LLC is Allan McDonnel, who is a citizen of Louisiana. The sole member of TVM Ventures, LLC is Tony Montalbano, who is a citizen of Louisiana. The sole member of KIMMLE, LLC is Kimberly Deckwa, who is a citizen of Louisiana. The sole member of MCG Construction, LLC is Stephen McGarry, who is a citizen

of Louisiana. The sole member of Jason Zuckerman, Architect, LLC is Jason Zuckerman, who is a citizen of Louisiana. The sole member of LPKM Investments, LLC is Lori Moser, who is a citizen of Louisiana. The sole member of Marse Consulting and Investments, LLC is Steven Marse, who is a citizen of Louisiana. Thus, TMG is a citizen of Louisiana.

## 2. COUNSEL FOR DEFENDANT-APPELLANT: The McDonnel Group, LLC

Counsel for Defendant-Appellant, The McDonnel Group, LLC, are:

RANDALL A. SMITH (No. 2117)
DYLAN T. LEACH (No. 35879)
ANDRE M. STOLIER (No. 40063)
SMITH & FAWER, LLC
201 St. Charles Avenue, Suite 3702
New Orleans, Louisiana 70170
Telephone: (504) 525-2200
Facsimile: (504) 525-2205

## 3. PLAINTIFF-APPELLEE: Archer Western Contractors, LLC

Archer Western Contractors, LLC ("AWC") is a limited liability company organized and existing under the laws of the State of Delaware, maintaining its principal place of business in the State of Illinois. AWC has three (3) members: the Walsh Group, Ltd., Matthew M. Walsh, III, and Daniel J. Walsh. Matthew Walsh, III and Daniel Walsh are each natural persons and citizens of the State of Illinois. The Walsh Group, Ltd. is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in the State of Illinois. Thus,

AWC is a citizen of Illinois.

4.    **COUNSEL FOR PLAINTIFF-APPELLEE: Archer Western Contractors, LLC**

Counsel for Plaintiff-Appellee, Archer Western Contractors, LLC, in the

District Court or on this appeal are:

DANIEL S. LUND III (No. 19014)
JEREMY T. GRABILL (No. 34924)
PATRICK M. JUDD (No. 40415)
PHELPS DUNBAR, LLP
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: (504) 566-1311
Facsimile:  (504) 568-9130

CARTER B. REID
   (Va. Bar No. 27192) *Pro Hac Vice*
DOMINICK P. WEINKAM
   (Va. Bar No. 92595) *Pro Hac Vice*
HENRY O. TAYLOR, IV
   (Va. Bar No. 97251) *Pro Hac Vice*
WATT, TIEDER, HOFFAR
      & FITZGERALD, LLP
1765 Greensboro Station Place, Suite 1000
McLean, Virginia 22102
Telephone: (703) 749-1000

Dated:  September 5, 2025

   /s/  *Andre M. Stolier*                        
ANDRE M. STOLIER

*Counsel for Defendant-Appellant,*
*The McDonnel Group, LLC*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Defendant–Appellant, The McDonnel Group, LLC ("TMG"), respectfully submits that oral argument will assist the Court in this appeal, which raises both procedural and substantive errors. Procedurally, the district court misapplied Federal Rule of Civil Procedure 19 by allowing Archer Western Contractors, LLC ("AWC") to pursue derivative claims belonging exclusively to an absent joint venture—solely to preserve diversity jurisdiction—despite inherent potential for prejudice and the availability of a proper state forum. Substantively, the court erred in granting summary judgment on AWC's breach-of-contract claim where genuine disputes exist as to whether TMG breached the Joint Venture Agreement at all by the conduct complained of, and where AWC failed to prove causation of damage—an essential element of the claim. Oral argument will aid the Court in evaluating these intertwined issues, the misapplication of controlling precedent, and the broader implications for Rule 19, Louisiana contract law, and federal-state comity.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ...................................................... i

STATEMENT REGARDING ORAL ARGUMENT ........................................... iv

TABLE OF CONTENTS ................................................................................. v

TABLE OF AUTHORITIES ............................................................................ vi

JURISDICTIONAL STATEMENT .................................................................... 1

STATEMENT OF THE ISSUES ....................................................................... 1

STATEMENT OF THE CASE .......................................................................... 2

SUMMARY OF THE ARGUMENT .................................................................. 5

LAW & ARGUMENT ..................................................................................... 6

I.      Standard of Review ........................................................................... 6

II.     The Denial of TMG's Motion to Dismiss was an Abuse of Discretion ........... 7

III.    Controlling Law and Questions of Fact Preclude Summary Judgment ......... 28

CONCLUSION ............................................................................................. 44

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME, TYPEFACE, AND TYPE-STYLE REQUIREMENTS ..................................................................... 45

CERTIFICATE OF SERVICE ......................................................................... 46

# TABLE OF AUTHORITIES

**Cases**:

*AMTAX Holdings 2001–VV, LLC v. Warren Homes, LLC*, 2015 WL 6869419, at *3 (E.D. La. 2015) ................................................................................ 10

*Brown v. Phoenix Life Ins. Co.*, 843 F. App'x 533 (5th Cir. 2021) .............................. 42

*Caytrans Project Servs. Ams., Ltd. v. BBC Chartering & Logistics GmbH & Co.*, 861 F. App'x 556 (5th Cir. 2021) ....................................................................... *passim*

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................ 7

*Coleman v. Querbes Co. No. 1*, 51,159 (La. App. 2 Cir. 2/15/17), 218 So. 3d 665 ................................................................................................... 23

*Concise Oil & Gas P'ship v. Louisiana Intrastate Gas Corp.*, 986 F.2d 1463 (5th Cir. 1993) ........................................................................................................ 29, 43

*Davidson v. Fairchild Controls Corp.*, 882 F.3d 180 (5th Cir. 2018) .......................... 7

*Edco Props. v. Landry*, 371 So. 2d 1367 (La. App. 3 Cir. 1979) ................................. 32

*Favela v. Collier*, 91 F.4th 1210 (5th Cir. 2024) ........................................................... 7

*Favrot v. Favrot*, 68 So. 3d 1099 (La. App. 4 Cir. 2011) .................................................. 28

*Fossier v. Am. Printing Co.*, 130 So. 2d 529 (La. Ct. App. 1961) ................................ 32

*Gensetix, Inc. v. Bd. of Regents of Univ. of Tex. Sys.*, 966 F.3d 1316 (Fed. Cir. 2020) .......................................................................................................... 11

*Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177 (5th Cir. 2007) .................................. 35

*Hibernia Nat. Bank v. Carner*, 997 F.2d 94 (5th Cir. 1993) ........................................ 30

*Hood ex rel. Mississippi v. City of Memphis, Tenn.*, 570 F.3d 625 (5th Cir. 2009) .......................................................................................... 9, 10

*IberiaBank v. Broussard*, 907 F.3d 826 (5th Cir. 2018) ..................................... 42

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ................................... 23

*Latiolais v. State Farm Mut. Auto Ins. Co.*, 2006-425 (La. App. 3 Cir. 11/22/06), 49 So. 2d 455 ................................................................................. 40

*Lerner ex rel. Gen. Elec. Co. v. Immelt*, 523 F. App'x 824 (2d Cir. 2013) ............... 19

*Loeb-Defever v. Mako, L.L.C.*, No. 22-20362, 2023 WL 5611042, *2 (5th Cir. Aug. 30, 2023) ................................................................................. 7

*In re La. Crawfish Producers*, 852 F.3d 456 (5th Cir. 2017) ......................... 7

*McDowell v. Bracken*, 794 F. App'x 910 (11th Cir. 2019) ............................ 19

*Magnolia Fin. Grp. v. Antos*, No. 15-7144, 2016 WL 7407174, at *2 (E.D. La. Dec. 22, 2016) ................................................................................. 41

*Moss v. Princip*, 913 F.3d 508 (5th Cir. 2019) ...................................... *passim*

*Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*, 117 F.4th 628 (5th Cir. 2024) ................................................................................. 7

*Orpheum Property, Inc. v. Coscina*, 2018 WL 1518471, at *5 (E.D. La. 2018) ....... 9

*Provident Tradesmen's Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968)... *passim*

*Pulitzer–Polster v. Pulitzer*, 784 F.2d 1305 (5th Cir. 1986) ..................... *passim*

*Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008) ......................... 23

*Stepak v. Addison*, 20 F.3d 398 (11th Cir. 1994) ................................... 19

*J. Weingarten, Inc. v. Northgate Mall, Inc.*, 404 So. 2d 896 (La. 1981) .............. 29, 43

*Wolf v. Bickham*, 498 F. Supp. 3d 897 (E.D. La. 2020) ............................. *passim*

**<u>Statutes, etc.</u>:**

La. Civ. Code art. 1986 ................................................................... 37, 38

La. Civ. Code art. 2817 ................................................................... 30

La. Civ. Code art. 3071 ................................................................... 33

La. Civ. Code art. 3075 ................................................................... 33

La. Civ. Code art. 3076 ................................................................... 33

Fed. R. Civ. P. 12 ............................................................................ 19

Fed. R. Civ. P. 19 ..................................................................... *passim*

Fed. R. Civ. P. 23 ..................................................................... *passim*

28 U.S.C. § 1332 ............................................................................. 1

28 U.S.C. § 1291 ............................................................................. 1

United States Court of Appeals for the Fifth Circuit Rule 28.2.1 .................................... i

Merriam-Webster.com Dictionary .............................................. 39

## JURISDICTIONAL STATEMENT

The district court ruled it had jurisdiction under 28 U.S.C. § 1332. Assuming that diversity jurisdiction is intact, this Court has appellate jurisdiction under 28 U.S.C. § 1291 because it is the appeal from a final judgment of the district court.

## STATEMENT OF THE ISSUES

1.     Whether the district court abused its discretion in denying dismissal under Federal Rule of Civil Procedure 19 where the Joint Venture—comprised of Appellant, The McDonnel Group, LLC ("TMG"), and Appellee, Archer Western Contractors, LLC ("AWC")—was the entity entitled to receive the more than $3 million awarded in the Final Judgment, and the court entered judgment affecting the Joint Venture's rights without joining it as a party.

2.     Whether the district court erred in granting summary judgment for AWC on its breach-of-contract claim by: (1) misinterpreting both the Agreement and TMG's settlement with the Law Enforcement Division of the Parish of Orleans, State of Louisiana ("the Owner"), thereby resolving disputed issues of intent that created genuine issues of material fact; and (2) ordering "specific performance," despite AWC's admitted failure to prove damage, an essential element of breach of contract, such that AWC was not entitled to judgment as a matter of law.

## STATEMENT OF THE CASE

This case stems from a Joint Venture Agreement ("the Agreement"), which established the McDonnel Group, L.L.C./Archer Western Contractors, Ltd. Joint Venture ("the JV") effective March 29, 2011. TMG and AWC entered into the Agreement for the purpose of submitting a bid for and obtaining a contract from the Owner for the construction of the "Orleans Parish Sheriff's Office Inmate Processing Center/Templeman III & IV Replacement Administration building" ("the Project"). On July 28, 2011, the JV entered into a contract with the Owner to construct the Project ("the Contract"). ROA.54.

During the course of performance of the Contract, a number of disputes arose between the JV and the Owner. ROA.383. The JV performed additional work and incurred direct costs and subcontractor costs at the request of the Owner for which the JV was not fully compensated. ROA.321. The JV incurred additional indirect costs as a result of the extended duration of the Project for which the JV was not fully compensated. *Id.* Over the objection of the JV, the Owner asserted entitlement to withhold payment of the remaining contract sum and retainage from the JV on the basis of certain alleged issues, including the assessment of liquidated damages. *Id.* Numerous lawsuits resulted from these construction disputes, including the matters in the Civil District Court for the Parish of Orleans, State of Louisiana, respectively captioned: *Marlin N. Gusman, et al. v. The McDonnel Group, L.L.C., et al.*, No.

2016-9061; and *Frisk/Frischhertz, a Joint Venture v. The McDonnel Group, L.L.C., et al.*, No. 2015-04553 c/w No. 2015-07862. ROA.322. The foregoing matters, filed a decade ago, arose as a result of the "Owner's failure to fully compensate the JV" and were still pending when the district court rendered summary judgment. *Id.*

AWC initiated this action on December 16, 2022, nearly seven (7) years after the inception of the underlying dispute over money allegedly lent by AWC to TMG. ROA.31. AWC alleges that, by May 2015, the Owner's wrongful failure to properly compensate the JV created critical cash flow issues for the JV. ROA.36. AWC alleged that the JV engaged in detailed planning and good-faith problem solving efforts to ensure that they were able to pay their subcontractors without the need for an additional capital call. ROA.2934. During the lead-up to the first requested capital call in 2015, AWC chose to prematurely pay retainage to subcontractors without the unanimous approval of the Executive Committee, thus creating a basis for the JV's cash flow issues absent the requisite consent under the Agreement. ROA.2935.

On July 18, 2023, the district court denied TMG's motion to dismiss for failure to join the JV and lack of subject matter jurisdiction, rejecting AWC's claim that the JV—the undisputed party for AWC's claims—was not a *required* party under Fed. R. Civ. P. 19(a), but finding the JV was not *indispensable* under Rule 19(b) such that the case could proceed between AWC and TMG. ROA.390-406. On February 16, 2024, the district court granted TMG's motion for partial summary

judgment "to the extent it [sought] dismissal of any and all claims related to TMG's purposed failure to make working capital contributions." ROA.2197.  This dismissed AWC's claim that it had loaned money for capital calls by the JV to TMG.  However, on June 6, 2024, the court granted partial summary judgment in favor of AWC, holding that TMG's April 29, 2022 settlement with the Owner breached the Agreement, and that AWC had standing to seek specific performance to enforce TMG's putative obligation *to the Joint Venture* to deposit the $2.7 million into *its* account, but denied other portions of the motion. ROA.2318-355. On August 8, 2024, the court denied TMG's motion for reconsideration, declining to dismiss all remaining capital contribution claims and reaffirming its holding on TMG's alleged breach of the Agreement for purporting to settle its share of any profits from the JV's claims with the Owner,[1] despite testimony that AWC lost no jobs and did not know whether the JV had been damaged. ROA.2437-451; *see also* ROA.2348.

Finally, on April 22, 2025, following a jury verdict on February 14, 2025, the court entered final judgment for AWC on its breach of contract claim relating to the settlement agreement, ordering TMG to place the $2.7 million plus damages for

---

[1] Pursuant to TMG's settlement with the Owner, the Owner is entitled only to TMG's share of any *net profits* ultimately due from the JV. ROA.781. TMG did *not*—and legally could not—compromise *any* portion of the JV's claims against the Owner. Because those claims belong exclusively to the JV, even a purported attempt by TMG to settle them, in whole or in part, would be a legal nullity, incapable of prejudicing either the JV or AWC. *See infra* § 3(B). Critically, the district court made no finding, nor did AWC allege, that TMG's settlement extinguished or reduced those claims.

delay into the JV's bank account, and entered judgment for TMG on AWC's remaining breach of contract and fiduciary duty claims, dismissing them with prejudice. ROA.3693. This appeal follows.

## SUMMARY OF THE ARGUMENT

The district court abused its discretion by allowing AWC to pursue claims that, under Louisiana law, belong exclusively to the JV and may be asserted only derivatively. Although the court correctly recognized the JV as a required party under Rule 19(a), it misapplied the Rule 19(b) factors to preserve diversity jurisdiction, disregarding both controlling precedent and the equitable principles underlying Rule 19. By adjudicating the JV's property rights without the JV present, the court created unavoidable prejudice: a judgment unenforceable against the entity that controls the funds, the risk of inconsistent obligations, and exposure to duplicative litigation. The "protective measures" the court proposed to lessen that prejudice were never entered and, in any event, could not bind the JV. The court further abused its discretion by evaluating the "adequacy" factor solely from AWC's perspective, while ignoring the availability of a state forum where the JV could be joined and complete relief afforded.

Separately, summary judgment cannot stand. First, the district court misinterpreted the Agreement and TMG's settlement with the Owner. The Agreement prohibits members from unilaterally settling the JV's "significant

claims," but nothing bars a member sued in its individual capacity from compromising that direct claim against it individually or only assigning its own interest in any net profits due it from the JV. By treating TMG's limited settlement as if it extinguished the JV's claims in the absence of any claim, evidence, or holding that the JV's claim was extinguished to any extent, the court effectively rewrote the contracts at issue and resolved disputed issues of intent that should have been left to the jury. Second, damage is an essential element of breach of contract, regardless of whether the remedy sought is specific performance or an award of money damages. AWC proved none resulting from TMG's alleged breach. Nevertheless, the court awarded relief foreclosed by law under the guise of "specific performance," dispensing with an essential element of the claim.

## LAW & ARGUMENT

### I.    Standard of Review

#### A.    Motion to Dismiss

A district court's decision on whether to dismiss for failure to join an indispensable party under Federal Rule of Civil Procedure 19 is reviewed for abuse of discretion. *Caytrans Project Servs. Ams., Ltd. v. BBC Chartering & Logistics GmbH & Co.*, 861 F. App'x 556, 559 (5th Cir. 2021). Because Rule 19 implicates the court's ability "in equity and good conscience" to proceed, the abuse-of-discretion standard is not a rubber stamp, and reversal is warranted where the district

court misapplies governing precedent or fails to properly weigh the Rule 19(b) factors.

### B.     Motion for Summary Judgment

The standard of review on summary judgment is *de novo*. *Favela v. Collier*, 91 F.4th 1210, 1212 (5th Cir. 2024) (citing *Davidson v. Fairchild Controls Corp.*, 882 F.3d 180, 184 (5th Cir. 2018)). "[A] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*, 117 F.4th 628, 637 (5th Cir. 2024) (quoting *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017)). When a party moving for summary judgments bears the ultimate burden of proof on the claim at issue, it must establish a *prima facie* case with admissible evidence. *Favela v. Collier*, 91 F.4th at 1212 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Importantly, the *de novo* standard of review requires this Court to "draw all inferences from the facts in the light most favorable to [TMG]." *Loeb-Defever v. Mako, L.L.C.*, No. 22-20362, 2023 WL 5611042, *2 (5th Cir. Aug. 30, 2023) (internal citation omitted).

## II.     The Denial of TMG's Motion to Dismiss was an Abuse of Discretion.

The district court's refusal to dismiss under Rule 19(b) was an abuse of discretion because it misapplied governing precedent, ignored the practical realities of the claims, and failed to weigh the Rule 19(b) factors in "equity and good

conscience." The JV is the real party in interest: AWC's claims are derivative *of* the JV's, seek recovery on behalf *of* the JV for *its* alleged injuries, and involve property allegedly owed by TMG *to* the JV. Yet, the court allowed the suit to proceed without this indispensable party in a misguided attempt to preserve diversity jurisdiction where none exists, despite the availability of a more than adequate forum in state court.

Allowing the matter to proceed without the JV prejudiced the JV and TMG, leaving TMG exposed to potentially duplicative litigation and inconsistent obligations. The court abused its discretion by relying on proposed "protective measures" which it never implemented to weigh the first favor against TMG. Regardless, any such measures could not bind the JV without its presence as a party. The court further misapplied the "adequacy" factor under Rule 19(b) by focusing on resolving AWC's claims in isolation, contrary to controlling Supreme Court precedent. Finally, the court discounted the availability of a complete remedy in state court. Properly applied, every Rule 19(b) factor favors dismissal, and allowing this decision to stand undermines both the letter and purpose of Rule 19.

### A. Because the JV is an Indispensable Party, the Court Should Reverse and Render Judgment Dismissing AWC's Complaint.

Federal Rule of Civil Procedure 19 "sets forth a two-step inquiry for a district court to determine whether a party should be joined in an action. First, the court must determine whether the party is necessary to the action under Rule 19(a). If the court

determines that the party is necessary, it must then determine whether the party is indispensable to the action under Rule 19(b)."[2] "Rule 19 seeks to bring into a lawsuit all those persons who ought to be there by requiring joinder. In circumstances where the litigation should not proceed without absent persons, the federal suit should be dismissed." *Pulitzer–Polster v. Pulitzer*, 784 F.2d 1305, 1308–09 (5th Cir. 1986).

As relevant here, Rule 19(a) mandates that a non-party must be joined if "in that person's absence, the court cannot accord complete relief among existing parties," or if the non-party claims an interest in the subject matter of the action and disposing of the action in its absence may, "as a practical matter impair or impede the person's ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a). "The party advocating joinder has the initial burden of demonstrating that a missing party is necessary." *Hood*, 570 F.3d at 628–29. Once an initial appraisal indicates a possibly necessary party is absent, "the burden of disputing this initial appraisal falls on the party who opposes joinder." *Id.* (internal citation and quotation marks omitted). Accordingly, because the court properly held that the JV was a "required" party under Rule 19(a), AWC bore the burden to establish that it was not indispensable under Rule 19(b). ROA.393. AWC failed to

---

[2] *Orpheum Property, Inc. v. Coscina*, 2018 WL 1518471, at *5 (E.D. La. 2018); *see also Hood ex rel. Mississippi v. City of Memphis, Tenn.*, 570 F.3d 625, 628–29 (5th Cir. 2009).

carry that burden, and the district court abused its discretion in holding otherwise.

As TMG explained below, the JV is indispensable because the claims asserted by AWC are derivative in nature. Each count of the complaint at issue seeks relief for alleged injury to the Joint Venture, including funds allegedly "due the JV and the JV's subcontractors" and damages to "the JV's litigation and settlement positions in the Owner–JV lawsuits." ROA.328. Any recovery from the alleged claims necessarily flows from purported injuries sustained by the JV itself, not AWC in its individual capacity. Under Louisiana law, a joint venture is a separate juridical entity, and only the joint venture has the procedural right to assert such claims.[3]

### B.    The Court Erred in Concluding the JV Was Not Indispensable.

When a necessary party cannot be joined without eliminating subject-matter jurisdiction, the court must decide whether that party is indispensable—i.e., whether the litigation can fairly and appropriately continue without them. *Hood*, 570 F.3d at 629. Under Rule 19(b), if joinder is not feasible, the court evaluates "in equity and good conscience" whether the action should proceed or be dismissed. Fed. R. Civ. P. 19(b). The rule directs courts to weigh the following factors: (1) the potential prejudice to the absent person or the existing parties; (2) the extent to which any

---

[3] *See Wolf v. Bickham*, 498 F. Supp. 3d 897, 904 (E.D. La. 2020) (holding that alleged claims "are derivative, really belonging to the partnership," rendering the partnership an indispensable party under Rule 19(b)); *AMTAX Holdings 2001–VV, LLC v. Warren Homes, LLC*, 2015 WL 6869419, at *3 (E.D. La. 2015) (claims for breach of a partnership agreement and fiduciary duty "premised upon injuries suffered directly by the [partnership]" were derivative and belonged to the entity).

prejudice could be mitigated through protective provisions, tailored relief, or other measures; (3) the adequacy of a judgment rendered in the party's absence; and (4) whether the plaintiff would have another adequate remedy if the case were dismissed for nonjoinder. *Id.*

As this Court has explained, these factors align with four distinct interests: (1) the plaintiff's interest in retaining a federal forum; (2) the defendant's interest in avoiding multiple or inconsistent obligations and sole responsibility for a shared liability; (3) the absent party's interest in protecting itself from prejudice; and (4) the courts' and public's interest in the efficient, consistent, and complete resolution of disputes. *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1312 (5th Cir. 1986) (citing *Provident Tradesmen's Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109–11 (1968)). No single factor is dispositive. *Gensetix, Inc. v. Bd. of Regents of Univ. of Tex. Sys.*, 966 F.3d 1316, 1326 (Fed. Cir. 2020).

Thus, in *Moss v. Princip*, this Court reiterated the Supreme Court's cautionary note: "whether a particular lawsuit must be dismissed in the absence of [an indispensable party] … can only be determined in the context of particular litigation," reaffirming that "there is no prescribed formula for determining in every case whether a person is an indispensable party." *Moss v. Princip*, 913 F.3d 508 (5th Cir. 2019) (quoting *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 117 (1968)) (internal quotation marks omitted).

### i.      The Court Abused its Discretion by Minimizing the Inherent Prejudice of Adjudicating the JV's Rights in its Absence.

The first Rule 19(b) factor asks "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties." Fed. R. Civ. P. 19(b)(1). The district court concluded there was no such prejudice here:

> [A]lthough the Joint Venture's interests are legally distinct from those of AWC and TMG, the parties have not demonstrated that they vary in reality from those of AWC and TMG. TMG has not explained how the Joint Venture is prejudiced by its absence.… Practically speaking, the interests of AWC and the Joint Venture largely overlap given AWC's large share of the Joint Venture. And to the extent that the interests of the Joint Venture more closely align with TMG, TMG's presence ensures that AWC does not enrich itself to the detriment of the Joint Venture. Simply put, both parties can adequately represent the interests of the Joint Venture so that the Joint Venture is not prejudiced by its absence.

ROA.403. That reasoning is legally flawed and an abuse of discretion under the authorities and record before the court.

The prejudice here is not speculative—it is inherent based on the unique facts and circumstances of this case, and a specter that threatens future litigants in similar circumstances absent reversal. AWC's Amended Complaint asserted claims for, *inter alia*, TMG's alleged breach of the Agreement, entirely derivative of AWC's interest in the JV. Nevertheless, AWC sought and obtained an order of specific performance on what is unquestionably the JV's claim. Accordingly, the court ordered TMG to deposit *into the JV's bank account* $2.7 million TMG received in

what the court construed as its individual settlement with the Owner after AWC impeded the JV's settlement discussions with the Owner. ROA.3693. Under Louisiana law, because the JV is a separate juridical entity, it was both the real party in interest and indispensable. *See Wolf*, 498 F. Supp. 3d at 904.

In *Wolf*, the court held that deciding rights to partnership property in the absence of the partnership "is itself sufficiently prejudicial to require dismissal" when joinder is not feasible. *Id.* at 905–06. That reasoning applies here, requiring dismissal. Although AWC and TMG are the JV's only members, that does not make the JV's participation in this case dispensable as a matter of law—there is no bright-line rule that renders the presence of a required party's constituent members dispositive. Adjudicating the JV's claims in its absence impairs its ability to protect its interests and risks inconsistent judgments and obligations arising from potentially duplicative litigation to the prejudice of TMG.

For example, if TMG fails to pay the judgment, AWC has no ability to enforce the judgment because the account into which the funds must be deposited is owned solely by the JV. Although the JV itself would need to enforce the order, it is not bound by or party to the judgment and cannot bring an action, or even intervene, under diversity jurisdiction to do so. This creates an enforcement gap that reveals precisely why the JV is an indispensable, rather than merely necessary, party. The district court's assumption that the JV's interests will be "adequately represented"

because its constituent members were present ignores the reality that those members are in active litigation against each other, that the Agreement requires unanimous consent to make significant decisions, and that the parties have a long and well-documented history of acrimony that frequently precludes such unanimity. In such an adversarial posture, the members of the JV cannot adequately represent the JV's distinct and separate interest.

Additionally, the risk of duplicative litigation is not solved by the judgment of the district court, which lacks any *res judicata* or other preclusive effect to prevent the JV from bringing suit against TMG in state court and seeking money damages for the same alleged breach. Although the JV's Executive Committee holds ultimate authority, AWC controls all decisions not requiring unanimity and therefore could have caused the JV to bring a derivative action against TMG based on the alleged breach of the Agreement arising from TMG's settlement with the Owner. ROA.758. Any such action, however, could only have been filed in state court because complete diversity is lacking. Rather than pursue that proper course, AWC filed this suit in its own name in federal court—an act of forum shopping designed to manufacture jurisdiction where none exists.

The prejudice to TMG from the district court's effective endorsement of AWC's forum shopping does not stand alone. It is compounded by the fact that, in its separate settlement with the Owner, TMG assigned its interest in the JV's net

profits to the Owner in exchange for payment limited solely to the amount that TMG
and the Owner stipulated to be TMG's proportional share of any potential proceeds
that might ever flow from the JV's claims. ROA.781. Without binding the JV or
imposing any protective measures, the court's Final Judgment directs TMG to
deposit funds from *its* settlement with the Owner into the JV's account. ROA.3693.
Accordingly, because the Owner holds a contractual right to TMG's share of any
positive recovery from the JV's claims, once those funds are deposited into the JV's
account, the JV—effectively controlled by AWC except where unanimous consent
is required—would have no choice but to distribute TMG's portion of any
subsequent settlement of the JV's entire claim to the Owner upon demand, or could
distribute them as it sees fit. That prejudice is a significant possibility, if not
likelihood. Crucially, absent reversal by this Court, that prejudicial risk will extend
far beyond the matter *sub judice*, threatening future litigants when scenarios
inevitably arise where a non-joined indispensable party controls disputed property.[4]

Another particularly acute risk here is that the JV could be placed into
liquidation or receivership, placing control in the hands of a neutral third party. Even
if the district court *had* implemented the "protective measures" it conceptualized (it

---

[4] For example, if a joint venture is absent, but one member is ordered to deposit disputed assets
into the entity's account, the absent entity could: (1) distribute those assets to creditors or third
parties not bound by the judgment; (2) reallocate them in ways inconsistent with the judgment; or
(3) use them to satisfy unrelated obligations, such as "reimbursements" to one of the joint
venturers.

did not),[5] such measures cannot bind the non-party JV. A court-appointed receiver

or liquidator would owe duties to the JV's creditors and stakeholders. Accordingly,

because the JV is not bound by the court's judgment, any remedial protective

measures would not bind the receiver, leaving the receiver free to litigate additional

claims for damages based on the same claims advanced by AWC or to distribute the

funds in a way that frustrates the appropriate allocation. Had the JV been joined,

these outcomes could not occur: the entity itself would be bound by the judgment,

and the proper state-court forum could craft relief directly binding the JV. This risk

underscores why *Wolf*, not *Moss*, provides the more apt comparison—while both

cases are factually distinct, this matter is far more analogous to *Wolf* than to the facts

and posture in *Moss*.

To wit, unlike the parties seeking dismissal under Rule 19(b) in *Moss*, TMG

is not weaponizing Rule 19(b) to avoid an adverse and otherwise complete judgment

in a case of buyer's remorse. In *Moss*, this Court was confronted with the defendants'

post-removal, post-judgment attempt to dismiss the litigation for want of subject

matter jurisdiction due to the presence of a non-diverse partnership. *See generally*

*Moss v. Princip*, 913 F.3d 508 (5th Cir. 2019). The defendants in *Moss* removed the

---

[5] *Compare* ROA.398 at n.90 (justifying its finding on the first factor by claiming that the "possibility of 'double, multiple, or otherwise inconsistent obligations' for TMG can be cured by the Court's enjoining of AWC from acting to assert, via the Joint Venture, any further claims against TMG for the claims brought herein"), *with* ROA.3693-94 (declining to impose any such protective measures in the final judgment).

case to federal court, pleading diversity jurisdiction, and no one challenged removal or diversity until *after* the jury verdict was rendered. *Id.* at 513. Thus, unlike the matter *sub judice*, the non-diverse partnership was present at all stages of the litigation in the district court. When the plaintiffs moved for entry of judgment on the verdict, the same defendants who sought removal and declined to raise lack of diversity until after an adverse verdict "moved to dismiss the case for lack of subject matter jurisdiction." *Id.* The absence here of the procedural gamesmanship underpinning *Moss's* holding renders it inapposite.

Accordingly, affirming the district court's abuse of discretion in the matter *sub judice* will effectively sanction the precise type of forum-shopping that gave this Court pause in *Moss.* Indeed, this case presents a textbook example of how bypassing Rule 19 invites forum shopping. It is indisputable that the claims alleged and damages awarded here belong to the JV—not to AWC individually—and that joinder of the JV would destroy diversity. The district court abused its discretion in misreading *Moss* by incorrectly concluding that the entire basis for this Court's decision was due to the "presence of each partner as a party to the litigation." ROA.401. Citing this Court's clarification in *Caytrans*—that *Moss* "was not dependent upon the procedural posture of the case"[6]—the court reasoned that TMG

---

[6] *See id.* (citing *Caytrans Project Servs. Americas, Ltd. v. BBC Chartering & Logistics GmbH & Co.*, 861 Fed. App. 556 (5th Cir. 2021)).

"cannot escape the clear import of *Moss*." *Id.* But this reading stretches *Caytrans'* clarification of *Moss* beyond recognition and tortures *Moss*'s consideration of case posture out of existence. *Caytrans* merely held that *Moss*'s outcome did not *solely* turn on the posture of the case—this Court neither held nor remotely suggested that the posture of a case is irrelevant.[7] Because *Caytrans* neither reversed nor abrogated any part of *Moss*, the district court's wholesale dismissal of the procedural posture's relevance constitutes an abuse of discretion. In essence, the district court ignored the cautionary guidance from both this Court in *Moss* and the Supreme Court in *Patterson*, *supra*, by prescribing a precise formula untethered to the caselaw and declining to consider the "context of [this] particular litigation."[8]

AWC's attempt to invoke federal jurisdiction is also particularly infirm because, despite its nature as a thinly veiled derivative claim on behalf of the JV, AWC failed to comply with Federal Rule of Civil Procedure 23.1. That rule mandates that a derivative complaint must:

> [A]llege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and [] state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort.

---

[7] *Caytrans*, 861 Fed. App. 556.
[8] *See Moss*, 913 F.3d 508; *Provident*, 390 U.S. 102.

Fed. R. Civ. P. 23.1(b). Here, AWC's controlling interest in the JV unquestionably gave it the ability to cause the JV to bring any derivative claims, even if it could not assert such claims directly. Its decision not to do so demonstrates the absence of demand futility. Rule 23.1(b)(2) further requires a plaintiff to plead that the action is not collusively maintained "to confer jurisdiction that the court would otherwise lack." *Id.* AWC failed to make that showing, and its decision to proceed in federal court constitutes an impermissible effort to evade the exclusive state-court forum required by law, underscoring the collusive nature of this action to manufacture federal jurisdiction where none exists in violation of Rule 23.1(b)(2).

Federal courts consistently recognize that dismissal is required when a party fails to meet Rule 23.1's heightened pleading requirements—particularly where, as here, the party was "required to show that demand was futile" and "failed to do so." *McDowell v. Bracken*, 794 F. App'x 910, 913, 917 (11th Cir. 2019) ("Failure to make a demand or to show why a demand would be futile means dismissal.").[9]

TMG never sought a federal forum. AWC served its complaint on TMG on February 2, 2023. ROA.117. Within just forty-three (43) days—on March 17, 2023—TMG filed two (2) motions to dismiss under Fed. R. Civ. P. 12(b), and did

---

[9] *See also Lerner ex rel. Gen. Elec. Co. v. Immelt*, 523 F. App'x 824 (2d Cir. 2013) (affirming dismissal for failure to comply with Rule 23.1); *Stepak v. Addison*, 20 F.3d 398, 402 (11th Cir. 1994) ("The heightened pleading standard further reinforces the notion that a shareholder derivative suit is an extraordinary procedural device, 'to be used only when it is clear that the corporation will not act to redress the alleged injury to itself.'") (internal citation omitted).

not file its answer until nearly two hundred (200) days later, when the district court ruled on these motions. ROA.203-04, 1290-1311. Thus, from the earliest stages of this litigation, TMG sought dismissal under Rule 19 in favor of more complete relief through an appropriate forum. Accordingly, both the court's forum-preservation interest and the prevailing litigant's interest in maintaining a favorable judgment, both of which animated the decision in *Moss*, are at their lowest ebb here. The facts here align far more closely with *Wolf*, in which the court recognized that deciding rights to an entity's property without that entity was inherently prejudicial because doing so "would potentially subject [one partner] to multiple suits." *Wolf*, 498 F. Supp. 3d at 905.[10] The precedent absent reversal invites litigants to deliberately omit indispensable entities to gain access to a federal forum, eroding Rule 19's protections and undermining the principles of federal-state comity and limited jurisdiction of federal courts.

The first factor weighs heavily in favor of finding the JV indispensable. The absence of the JV creates tangible and unavoidable prejudice both to the JV and to TMG, and that prejudice cannot be eliminated by imposing protective measures— particularly where, as here, the court declines to impose them.

---

[10] While *Wolf* went on to note that this is "*especially true*" where one partner is absent, neither *Moss* nor any decision of this Court cited below renders that reality untrue as a matter of law when all partners are present. *Id.* (emphasis added).

### ii.     The District Court's Hypothetical "Protective Measures" Were Never Implemented and Cannot Cure the Prejudice.

The second Rule 19(b) factor asks "the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, by the shaping of relief, or other measures." Fed. R. Civ. P. 19(b)(2). The district court concluded that the "prejudice may be 'lessened or avoided' by tailoring any relief in this action to bind the Joint Venture's constituent members from pursuing any further litigation against TMG." ROA.404. However, that safeguard was never implemented. Neither the court's order denying TMG's motion to dismiss, nor its later ruling granting AWC's motion for summary judgment, nor its final judgment include *any* protective measure that prevents the JV from pursuing further litigation against TMG. ROA.3693-94.

Moreover, that defect cannot be cured to salvage jurisdiction through any protective measures, whether on appeal or on remand. The measure contemplated by the district court could only bind AWC—not the JV. It is undisputed that the claims and any related damages belong to the JV. As a result, the JV itself remains free to assert claims against TMG, or worse, such derivative claims could be assigned by AWC to a third party through its controlling interest of the JV. Thus, even enjoining AWC from pursuing such litigation against TMG on the JV's behalf would be insufficient, as it would bind neither the JV nor any assignee of AWC's

interest in the JV's claims.[11]

This case is not one in which shaping the relief can make the absent party's presence dispensable. The JV is not a peripheral actor, and neither its nor TMG's interests can be protected by fashioning the relief. The JV's absence leaves TMG vulnerable to precisely the type of duplicative litigation and conflicting obligations that Rule 19(b) exists to prevent. As *Wolf* confirms, when the absent entity owns both the claim and the property at issue, the second factor weighs in favor of dismissal. *Wolf*, 498 F. Supp. 3d at 906.

### iii.    The District Court Overlooked That Any Judgment Without the Joint Venture Would be Inadequate and Lacking Finality.

The third Rule 19(b) factor considers "whether a judgment rendered in the person's absence would be adequate." Fed. R. Civ. P. 19(b)(3). The district court concluded that this factor favored proceeding without the JV because, the court reasoned, it "can ensure the 'complete, consistent, and efficient settlement' of the issues *raised in <u>this</u> litigation* without the presence of the Joint Venture." ROA.405 (emphasis added). However, that conclusion misapplies the factor and ignores controlling precedent.

---

[11] Importantly, as explained below, while the Agreement prohibits the assignment of an interest in the JV, itself, to third parties without consent, there is no such prohibition with respect to a parties' interest in the profits from the JV's claims.

In *Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008), the Supreme Court rejected an analogous misapplication of Rule 19(b)'s third factor. The Court explained that "adequacy," as used in 19(b)(3), "refers to the 'public stake in settling disputes by wholes, whenever possible.'" *Id.* at 870 (quoting *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 111 (1968)). Thus, this factor embodies the "social interest in the efficient administration of justice and the avoidance of multiple litigation," which has "traditionally been thought to support compulsory joinder of absent and potentially adverse claimants." *Id.* (quoting *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 737–38 (1977)).

In its Second Amended Complaint, AWC asserted that "the amounts sought herein are due to the Joint Venture and the Joint Venture's subcontractors." ROA.331. Under Louisiana law, such derivative claims may be brought only by the juridical entity itself, not by its members.[12] Nevertheless, the court's Final Judgment directs TMG to deposit $2.7 million "into the *Joint Venture's* bank account." ROA.3694 (emphasis added). Glaringly, the JV is not a party, is not the judgment creditor, and is not bound by the court's decision. Once the funds are deposited, the JV remains free to allocate them in ways inconsistent with any intended purpose.

---

[12] *See Coleman v. Querbes Co. No. 1*, 51,159 (La. App. 2 Cir. 2/15/17), 218 So. 3d 665, 676-77 (affirming the district court's order sustaining exception of no cause of action by members of a joint venture who failed to bring claims derivatively), *writ denied*, 2017-0694 (La. 6/29/17), 222 So. 3d 31.

And because the JV was not joined, it—or an assignee of its claims—remains free to bring the same claims against TMG in another forum. As with the second factor, the district court effectively conceded that the third factor favored dismissal by reasoning that any concerns over adequacy of the judgment could be addressed by "tailoring any relief in this matter to prohibit the party-members from bringing any further litigation on behalf of the Joint Venture itself." ROA.405. As explained above, that measure was never imposed, and this purely hypothetical protective measure misses the mark on the "adequacy" element under this factor.

Further, the district court's focus on "ensuring the complete … settlement of the issues raised in *this* litigation" repeats the very error that the Supreme Court condemned in *Pimentel*: treating "adequacy" under Fed. R. Civ. P. 19(b)(3) as synonymous with resolving the present *plaintiff's* claims, rather than the dispute as a whole.[13] Indeed, the court actually acknowledged that "[t]he presence of multiple litigation and its attendant burdens on the parties and the court system should also be considered,"[14] but declined to weigh that consideration on the ground that "[t]he parties have barely addressed this factor." *Id.* In fact, TMG's motion to dismiss

---

[13] *Compare* ROA.405 (concluding the third factor does not favor a finding that the JV is indispensable by reasoning that the court can resolve "the issues raised in *this* litigation") (emphasis added), *with Pimentel*, 553 U.S. at 870 (noting that the lower court misunderstood "'adequacy' to refer to satisfaction of the Pimental class' claims," and reasoning that "adequacy refers to the 'public stake in settling disputes by wholes, whenever possible'") (internal citation and quotation marks omitted).

[14] *See* ROA.405-06 (quoting *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1313 (5th Cir. 1986)).

explicitly informed the court that "numerous lawsuits have resulted from these construction disputes" and remain pending in Louisiana state court. ROA.208. Ignoring that reality and proceeding without the JV leaves this controversy unresolved in precisely the way Rule 19(b)(3) and *Pimentel* warn against.

TMG's settlement with the Owner also illustrates why a judgment without the JV is not "adequate" under Rule 19(b)(3). The public interest in "settling disputes by wholes" is defeated when the entity controlling the disputed funds is not before the court. Because the JV is not bound by the judgment, the court cannot prevent the JV from distributing the deposited funds improperly or pursuing the same claims against TMG in state court. Laying the prejudice to TMG bare, the decisions below permit the JV to pay the Owner a portion of any potential payment due to TMG under TMG's assignment of its interest in the JV's net profits. Thus, while the court's ruling resolves the dispute between AWC and TMG on paper, it leaves the actual disposition of the funds vulnerable to abuse to TMG's clear prejudice. The only way to obtain a resolution binding all parties with a stake in those funds is to join the JV in a forum with jurisdiction over it. Federal court is not that forum.

### iv.     The District Court Failed to Give Weight to the Availability of an Adequate State Forum Where the Joint Venture Could be Joined.

The fourth Rule 19(b) factor concerns "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P.

19(b)(4). The district court acknowledged that Louisiana state court is an available forum, explaining that AWC "has not demonstrated anything more than a weak interest in the federal forum," and reasoning that it "has not shown that it would be deprived of a remedy were the Court to dismiss this action and AWC were to refile in state court." ROA.405. Nevertheless, the court failed to give this factor the appropriate weight, an abuse of discretion compounded by the court's improper application of the Rule 19(b) factors as whole.

Louisiana state court is not merely an "adequate" alternative—it is the *only* proper forum. Except for AWC, every aspect of the JV and its existence arose in the now-drained swampland of Louisiana and its local peculiarities: the JV was organized and operated under Louisiana law to build a construction project in Orleans Parish, related disputes arose in Louisiana, and numerous related suits were pending in Louisiana state court when AWC commenced this litigation. That court has unquestioned jurisdiction over the JV, can join it as a party, and can adjudicate the derivative and direct claims in full. This is not a case where dismissal would leave the plaintiff without a forum; dismissal would place the dispute in the forum best positioned to resolve it completely and consistently.

The existence of a pending, competent, and complete state forum weighs heavily in favor of dismissal. The fourth factor therefore reinforces what the first three (3) already establish: in "equity and good conscience," this action should never

have proceeded without the JV.

### v. Properly Balancing the Rule 19(b) Factors Compels Dismissal "In Equity and Good Conscience."

Rule 19(b) requires the court to determine "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." This final step is not a free-floating exercise of discretion but an integrated assessment of the four (4) enumerated factors, guided by precedent and the rule's underlying purposes. Weighed properly, each factor points toward dismissal.

First, adjudicating the JV's claims without the JV creates concrete prejudice: the judgment cannot be enforced against the real party in interest, TMG faces exposure to conflicting obligations, and duplicative litigation is likely. Second, no feasible measure can mitigate this prejudice; the district court's proposed "protective measure" was never implemented and, even if it had been, it could not bind the JV or prevent AWC from circumventing it. Third, the adequacy factor was misapplied: Rule 19(b)(3) looks to resolving disputes "by wholes," not just the plaintiff's claims in isolation. Because the JV is absent, the judgment leaves the controversy unresolved and invites further litigation. Fourth, an adequate remedy exists in the pending state-court proceedings, where all necessary parties—including the JV— can be joined and bound, ensuring a single, final resolution and conserving judicial resources.

When the Rule 19(b) factors are considered together, "equity and good conscience" do not permit this case to proceed without the JV. Far from being a close call, the analysis confirms that this is precisely the type of dispute Rule 19(b) was designed to address: one in which the real party in interest is absent, the prejudice is unavoidable, and an alternative forum exists to provide complete relief. The district court's contrary conclusion upsets both the letter and the spirit of the rule. This case should never have proceeded without the Joint Venture. Allowing it to stand not only leaves the parties entangled in piecemeal litigation but also rewards procedural maneuvering that Rule 19 was designed to prevent.

## III. Controlling Law and Questions of Fact Preclude Summary Judgment.

### A. AWC Cannot Escape or Satisfy the Essential Elements of its Claim.

Under Louisiana law, a breach-of-contract claim requires proof of three (3) "essential elements": (1) the obligor undertook an obligation to perform; (2) the obligor failed to perform that obligation; and (3) the obligor's failure resulted in damages to the obligee. *Favrot v. Favrot*, 68 So. 3d 1099, 1108–09 (La. App. 4 Cir. 2011). The district court erred in granting summary judgment and ordering specific performance of an obligation that TMG could not have failed to perform because it was never obliged to in the first place.

Further, each element must be established to prevail on a breach of contract claim under every jurisprudential recitation applying Louisiana law, including this

Court and the Louisiana Supreme Court.[15] Accordingly, the "preferred remedy" for such claims of specific performance necessarily requires satisfaction of these elements without dispensing for the need to establish damages. Thus, the district court likewise erred in granting summary judgment because AWC did not establish that TMG's alleged breach caused it any damages.

### B. The Court Erred in Finding a Breach Where TMG Settled Only its Own Claims with the Owner.

The district court concluded that TMG breached the Agreement by impermissibly "settling a significant portion of the JV's claims" against the Owner without the consent required by Article 4(c)(vi). ROA.2339. Because that ruling rewrites the Agreement and mischaracterizes TMG's settlement with the Owner, summary judgment on this claim must be reversed.

Pursuant to its settlement with the Owner, TMG assigned only *its* entitlement to *its* share of net profits otherwise due to TMG from the JV upon project completion. ROA.781. This confirms that TMG did not—because it legally *could not*—settle any portion of the JV's claims against the Owner. Because those claims belong exclusively to the JV, any attempt by TMG to compromise them without AWC's participation—whether in whole or in part—would be a nullity, incapable of prejudicing either the JV or AWC. Moreover, under Louisiana law, a joint venture

---

[15] *See, e.g., J. Weingarten, Inc. v. Northgate Mall, Inc.*, 404 So. 2d 896, 901 (La. 1981); *Concise Oil & Gas P'ship v. Louisiana Intrastate Gas Corp.*, 986 F.2d 1463, 1471 (5th Cir. 1993).

partner is individually liable only for its virile share of the venture's obligations. *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 99 (5th Cir. 1993), *as clarified on denial of reh'g* (Sept. 15, 1993) (citing La. Civ. Code art. 2817). Here, the Owner sued TMG individually, and TMG's settlement merely reduced *its own* interest in net profits after project completion to protect *itself* against the substantial risk of both individual and duplicative liability to the Owner if it prevailed against TMG and/or the JV and the JV was unable to satisfy the judgment. ROA.779–81. TMG's actions to protect itself from such exposure do not constitute a breach of the Agreement.

Even if the settlement *could* be read as intending to assign or settle any portion of the JV's claim, no effect could be given to such intent because TMG lacked both legal and contractual authority to do so. The settlement states that TMG assigned to the Owner "the 30% rights of TMG," which could only refer to TMG's right under Art. 14 of the Agreement to 30% of net profits after project completion. ROA.780. Thus, TMG's settlement with the Owner *could not* breach the Agreement. Further, because such an interpretation is devoid of support under the settlement's plain terms, TMG cannot even be said to have attempted to breach the agreement as the district court held. TMG acting to protect its exposure to personal liability to the Owner is not a violation of the Agreement.

Under its plain language, the Agreement did not bar TMG from defending itself when sued individually by the Sheriff or from resolving that dispute. Unable

to secure AWC's consent for the JV to settle with the Owner, TMG—named as an individual defendant—prudently compromised only its individual interest. ROA.2342. The Agreement prohibits members from settling the JV's "significant claims" as a whole, but it says nothing as to their right *vel non* to compromise their individual interests therein while leaving the underlying claim entirely intact. ROA.758. Accordingly, TMG's settlement of its own interests does not violate that provision. Through that settlement, TMG resolved only its own rights—neither AWC's rights nor the JV's claim were compromised. ROA.781. The district court did not hold otherwise, but nevertheless found TMG in breach of the provision. Thus, reversal is proper.

The circumstances of the settlement confirm that its parties were neither compromising nor purporting to compromise the JV's claims. The Owner entered into the settlement because it recognized that the JV could likely prove a breach of contract and recover a substantial judgment. The agreement itself recites that the Owner offered to settle those claims for $9 million. Had litigation proceeded and the Owner been held liable—or had the JV accepted that offer—TMG would have been entitled under Article 14 of the Agreement to recoup its share of net profits from the JV. By structuring the $2.7 million payment directly to TMG in exchange for assignment and subrogation rights, TMG and the Owner created a mechanism for the Owner to recover what it paid to TMG—and potentially more *solely* at TMG's

expense and without prejudice to AWC—through its assigned share of TMG's *net profits* upon project completion. This arrangement did not extinguish the JV's claims to any extent—the JV's right to full recovery from the Owner was left entirely intact.

As a threshold issue, the district court's ruling ignores the fundamental legal impossibility of the alleged breach. As a partner in the JV, TMG had no ownership interest in, or right to, any specific asset or claim of the venture. Louisiana courts have long made clear that "[t]he right of the individual partners to property standing in the name of the partnership is no more than a right to an undivided interest in whatever property remains *after* the partnership is dissolved, its rights and obligations are satisfied, and its unliquidated assets liquidated." *Edco Props. v. Landry*, 371 So. 2d 1367, 1371 (La. App. 3 Cir. 1979) (emphasis added), *writ denied*, 375 So. 2d 945 (La. 1979). Thus, "[i]t is well settled that a partner has no interest in the individual assets of the partnership," and "the transfer by one partner of his interest in an unliquidated partnership is neither a sale of specific property nor of any interest in specific property." *Id.* Accordingly, the transfer "by one partner of his interest in an unliquidated partnership is neither a sale of specific property nor of any interest in specific property." *Id.* Consistent with these principles, Louisiana courts hold that a joint venture's claim for damages "is also a chose in action belonging to the joint venture which may [n]ot be exercised by [the JV's constituent member] in his own name." *Fossier v. Am. Printing Co.*, 130 So. 2d 529 (La. Ct.

App. 1961).

Likewise, black-letter Civil Code articles governing settlements render the court's conclusions irreconcilable with the intent and effects of TMG's settlement with the Owner. Louisiana law makes clear that a compromise—i.e., a settlement agreement—resolves "only those differences that the parties clearly intended to settle." La. Civ. Code art. 3076 (emphasis added). When entered by only one of several parties with an interest in the same matter, a compromise "does not bind the others." La. Civ. Code art. 3075; *see also* La. Civ. Code art. 3071. A plain reading of TMG's settlement with the Owner confirms it resolved only "its share of the claims by the JV against the [Owner]," not the JV's claims or AWC's interests. *Id.*; ROA.781. Under TMG's settlement with the Owner, the JV remains free to pursue its full, undivided claim and recover any damages, subject only to the Owner's subrogation rights against TMG's portion. To treat TMG's limited compromise of *its* rights and liabilities as an impermissible settlement of the JV's "significant claims" ignores controlling law and rewrites both the Agreement and TMG's settlement with the Owner for a result-oriented outcome.

Respectfully, the district court's conclusion also rests on contradictory reasoning. On the one hand, the court recognized that the Agreement requires unanimous consent only to "settle ***significant claims*** against the Owner." ROA.2338 (quoting the Agreement) (emphasis added). Nevertheless, the court held that TMG

breached this provision because it "settled a significant *portion* of the Joint Venture's claims." ROA.2339 (emphasis added). The court compounded this error by asserting that "TMG cannot now claim that it settled only its portion of the Joint Venture's claim against the Owner," despite its own recognition that this is precisely what occurred. ROA.2341. This false equivalency between TMG's settlement of its share of the JV's proceeds from claims against the Owner—which unquestionably did not resolve any part of the JV's claim, but merely assigned the Owner TMG's share therein—and a settlement of the JV's "significant claims against the Owner" cannot entitle AWC to summary judgment. Separate and apart from the court's false equivalence between settling "significant claims [owned by the JV]" and "a significant portion of the [JV's] claims," its finding of breach is irreconcilable with TMG's lack of authority to settle *any* portion of the JV's claim under the Agreement or the governing law of joint ventures and, just as fatally, disregards the settlement's clear and unambiguous language to the contrary.[16]

The district court effectively held that TMG intended its settlement with the Owner to resolve the JV's "significant claims" against the Owner, impermissibly

---

[16] *Compare* ROA.2339 (finding that "[b]ecause TMG settled a *significant portion* of the Joint Venture's claims without unanimous Executive Committee approval, TMG's settlement Agreement violated the clear language of Article 4(c)(vi)") (emphasis added), *with* ROA.758 (requiring unanimity of the Executive Committee for the JV to "settle *significant claims* against the owner") (emphasis added), *and* ROA.781 ("In exchange for the ... payment [by the Owner to TMG], TMG assigns and subrogates to the [Owner] any and all rights *it*"—i.e., TMG—"possesses against the [Owner] to the project funds either directly or as a 30% joint venturer in the JV") (emphasis added).

granting summary judgment on a question of fact. *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007) ("Intent is an *issue of fact* which is to be inferred from all of the surrounding circumstances.") (emphasis in original) (internal citations omitted). Neither the Agreement nor TMG's settlement contains language preventing a party from resolving its own share of the JV's claim with the Owner. By reaching the opposite conclusion, the court substituted its interpretation for the contracts' plain terms, effectively treating them as ambiguous while usurping the factfinder's role. Yet, "when a contract is ambiguous, the trier of fact must resolve the factual issues of intent, and … summary judgment is improper." *Id.*[17] By deciding intent contrary to unambiguous language in both the Agreement and TMG's settlement, the court usurped the fact-finder's role and erred in granting summary judgment.

The court's improper resolution of disputed factual questions regarding TMG's intent in settling with the Owner is compounded by its even greater error in making implicit findings—impermissible on summary judgment—as to the Owner's intent. In doing so, the court went further still, purporting to determine the intent of a party not before it and not bound by its interpretation of the settlement. As noted in Section II, *supra*, this misstep exposes TMG to the risk of inconsistent verdicts if

---

[17] *See also id.* at 180, n.4 (reversing where ambiguity in contracts rendered ruling "inappropriate on summary judgment….").

the Owner later pursues an action against TMG under the settlement.

### C.    The Court's Order of "Specific Performance" Amounts to a Damages Award, Despite the Absence of Damages.

The district court further erred by effectively awarding money damages to the non-party JV, despite acknowledging that AWC alleged no damages to itself or to the JV from TMG's purported breach, under the guise of specific performance. The court ordered TMG to deposit its settlement proceeds into the JV's account—a remedy that neither constitutes specific performance of any obligation breached by TMG nor aligns with the plain language of the Agreement or Louisiana law.

The district court expressly recognized that "AWC does not seek any monetary damages for its breach of contract claim." ROA.2348. This was required because AWC did not dispute that the JV did not know if it was damaged by the settlement between TMG and the Owner. ROA.1735-6, 2071-2. When asked if the JV had suffered any damages, AWC's president answered, "Probably. We don't know yet." ROA.1723, 1735-6, 2071-2. He similarly could not identify a single job or opportunity AWC lost as a result, and there was no reduction in the JV's pending claim against the Owner.  ROA.1729-30. Yet, the district court reasoned "that AWC does not seek monetary damages on its claim does not mean … that it cannot seek specific performance." ROA.2350. Recognizing that AWC would have "the burden of proving [] damages" if it had sought them, the court nevertheless concluded "it does not follow that a plaintiff must prove damages where the plaintiff seeks specific

performance, not monetary damages." *Id.* No authority supports the proposition explicit in this holding—that showing damages caused by an alleged breach are not an essential element of a breach of contract claim when the remedy sought is specific performance. The court's order requiring TMG to deposit its settlement proceeds into the JV's account was, in substance, an impermissible damages award under the guise of specific performance, despite AWC never alleging—and the court never finding—that AWC suffered any damages.

Under Louisiana law, "[u]pon an obligor's failure to perform an obligation to … not to an act …, the court shall grant specific performance plus damages for delay if the obligee so demands. If specific performance is impracticable, the court may allow damages to the obligee." La. Civ. Code art. 1986. The court's order requiring TMG to deposit its settlement proceeds into the JV's account rested on its finding that TMG breached three (3) provisions of the Agreement. First, it held TMG violated Article 4(c)(vi), prohibiting the parties from "settl[ing] significant claims against the Owner." ROA.2338-39. Second, it found a breach of Article 8(a), requiring that "all of the funds received by the Joint Venture or by any of the parties on behalf of the Joint Venture in connection with the performance of said Contract shall be deposited in" the JV's bank account. ROA.2339-43. Finally, it concluded that TMG violated Article 16(a) by assigning to the Owner TMG's share of the JV's net profits. ROA.2344-47.

Only the second of these alleged breaches could plausibly justify an order of specific performance—though it, too, falls short. The other provisions do not remotely require depositing funds into the JV's account, and thus no order requiring performance of the obligations arising thereunder would require TMG to do so. As to Article 4(c)(vi), first, TMG did *not* settle any of the JV's claims,[18] much less "*significant* claims," and accordingly could not have breached the provision. Second, even if TMG *had* settled "significant claims" owned by the JV, notwithstanding the contractual and legal impediments to doing so, TMG's obligation under Article 4(c)(vi) is one "not to do an act," and thus insusceptible to specific performance; because the "act" had long been completed by the time AWC brought this action, performance of that obligation stretches past "impracticable" to "impossible."[19] Nor can any such breach support such an award of damages, as AWC declined to evidence any damages resulting from that purported breach.[20]

As to Article 8(a), the district court's reasoning again rested on an impermissible finding of intent. Nothing in the settlement agreement states that TMG accepted funds "on behalf of the Joint Venture," as required for TMG to breach the Agreement. ROA.763. To the contrary, the agreement expressly provides that

---

[18] *See supra* § III(B).

[19] *See* La. Civ. Code art. 1986 (allowing damages when specific performance is impracticable).

[20] For the same reasons, the court's determination that TMG breached Article 2(b) of the Agreement by negotiating with the Owner cannot support its award, regardless of whether rendered as a money judgment or under the guise of specific performance.

TMG received the proceeds for its own benefit, in compensation for *its* own share of the JV's claim in light of AWC's refusal to vote in favor of settlement with the Owner to both TMG's and the JV's detriment. ROA.780.

The issue on summary judgment was thus narrow: whether TMG received the settlement funds "on behalf of" the JV, as opposed to merely "in relation" to the JV. ROA.763. The plain meaning of the phrase "on behalf of" is "in the interest of" or "as a representative of."[21] Here, TMG's settlement with the Owner expressly disclaims that TMG was acting on the JV's "behalf," explicitly qualifying that "the JV has NOT agreed to this settlement proposal." ROA.763. It would be an understatement to say that it strains credulity to conclude that TMG accepted "on behalf of" the JV only TMG's portion of that which AWC explicitly refused to accept from the Owner. TMG's settlement with the Owner deprived such a conclusion of any basis in the record. Specifically, the agreement explains that it was predicated on the fact that the Owner "offered to settle all claims with the JV by," *inter alia*, paying "the sum of $9,000,000 to the JV," but that "the JV has NOT agreed to this settlement proposal," and accordingly provides that the payment by the Owner "shall be made *directly to* TMG and shall *not* be made by joint check," and divests TMG of any right to receive a share of any proceeds paid to the JV by

---

[21] *Behalf*, Merriam-Webster.com Dictionary,
https://www.merriam-webster.com/dictionary/behalf (last visited Aug. 16, 2025).

the Owner on the JV's entirely intact claims. ROA.780-81 (emphasis added). At most, whether TMG intended to act "on behalf of" the JV presents a factual dispute, precluding summary judgment. *See*, *e.g.*, *Latiolais v. State Farm Mut. Auto Ins. Co.*, 2006-425 (La. App. 3 Cir. 11/22/06), 949 So. 2d 455, 462 (finding "a genuine issue of material fact as to whether" a party acted "on behalf of" another).

By imputing intent inconsistent with the plain language of both the Agreement and the settlement, the court resolved a disputed factual issue that should have been left for the trier-of-fact. For these reasons, the district court erred in granting summary judgment under Article 8(a).

### D.     Specific Performance Was Improper as a Matter of Law.

Even apart from the flaws addressed above, the district court's grant of specific performance improperly dispensed with a core element for breach of contract. Damages are an essential element of breach, and there is no exception when the relief sought is specific performance. By excusing AWC from proving damages, the court effectively relieved it of its burden of proof and created an exception to black-letter law that does not exist. AWC explicitly disclaimed suffering *any* damages, for delay or otherwise, in its effort to persuade the district court to grant an order of specific performance. ROA.2221. Then, after partial summary judgment was granted, moved for an award of damages for delay. This gamesmanship shows that summary judgment must be reversed, and judgment rendered in TMG's favor

dismissing AWC's claims for breach of contract, breach of fiduciary duties, and unjust enrichment.

The court did not dispute AWC's failure to establish that TMG's alleged breach caused it any damage. Louisiana law is explicit: "[i]n order to recover for breach of contract … the plaintiff must prove: (1) the obligor's undertaking of an obligation to perform; (2) that the obligor failed to perform the obligation (i.e. breach); and (3) that the breach resulted in damages to the obligee." *Magnolia Fin. Grp. v. Antos*, No. 15-7144, 2016 WL 7407174, at *2 (E.D. La. Dec. 22, 2016). Here, there is no question that AWC did not seek damages under its breach claims. ROA.2348. In fact, not only has AWC failed to establish that it suffered any damages, but the district court's ruling presents the distinct possibility that *TMG* will be the party to suffer damages: Because TMG assigned its interest in the net profits due from the JV in exchange for *TMG's* portion of the settlement offer that AWC refused to accept, the Owner is entitled to any amounts due to TMG as profits that the JV ultimately recovers on those claims. ROA.781.

The district court concluded that a party need not prove damage resulting from a breach. ROA.2350. Glaringly, however, neither that holding nor AWC's briefs below cited any authority exempting what this Court has long recognized as an "essential element" to a breach of contract claim when the remedy sought is specific

performance.[22] It would be inconsistent for decades of Louisiana jurisprudence and this Court's precedent to define damage as an "essential element" for breach of contract but exclude that element when the plaintiff seeks specific performance—particularly given that specific performance is unquestionably the "preferred remedy *for* breach of contract." *Brown v. Phoenix Life Ins. Co.*, 843 F. App'x 533, 546 (5th Cir. 2021) (emphasis added).[23] Given the foregoing, TMG respectfully submits that AWC, in its responsive brief, will be unable to cite any binding authority holding that specific performance is available in the absence of damage. To hold otherwise merely because the issue is *res nova* would disregard decades of Louisiana jurisprudence and this Court's own precedent on the "essential elements" required to obtain the preferred remedy of specific performance by first prevailing on the underlying claim that affords such relief.

The district court's own ruling confirms the inconsistency: it recognized that AWC had to establish each of the three (3) elements of breach—"(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee"—and that specific performance is merely a "remedy for breach of contract." ROA.2332,

---

[22] *Compare* ROA.2350, n.141, *with IberiaBank v. Broussard*, 907 F.3d 826, 835 (5th Cir. 2018).
[23] *See also* ROA.541, 546 (listing damages as an "essential" element for breach and explaining that "specific performance is the preferred remedy for breach of contract") (internal citations and quotation marks omitted).

2349 (internal citation omitted).

Moreover, Louisiana's jurisprudence has long recognized that, even when available, specific performance must yield when its costs are disproportionate to the damages suffered. In its seminal case on the specific performance, the Louisiana Supreme Court explained that "the right to specific performance" is improper when "greatly disproportionate in cost to the actual damage caused." *J. Weingarten, Inc. v. Northgate Mall, Inc.*, 404 So. 2d 896, 901 (La. 1981). Likewise, for decades, this Court has recognized that specific performance should be withheld when the breaching party's "cost of performance is greatly disproportionate to the damages caused." *Concise Oil & Gas P'ship v. Louisiana Intrastate Gas Corp.*, 986 F.2d 1463, 1471 (5th Cir. 1993) (citing *Weingarten*, 404 So. 2d at 901). Here, because AWC neither sought nor proved that it suffered *any* damage as a result of TMG's alleged breach, the disproportionality balancing test tips so heavily in TMG's favor that AWC's claim for specific performance collapses under its weight.

Accordingly, AWC's claim for specific performance was foreclosed altogether as a matter of law. Thus, because AWC could not establish entitlement to summary judgment as a matter of law, the district court's ruling to the contrary was improper and must be reversed.

## CONCLUSION

For the foregoing reasons, Defendant–Appellant, The McDonnel Group, LLC, respectfully requests that this Honorable Court reverse the district court's judgment. As a threshold matter, the court abused its discretion by denying TMG's motion to dismiss for failure to join the non-diverse Joint Venture as an indispensable party. Even assuming arguendo that jurisdiction existed, the court further erred in granting summary judgment on AWC's claims that were either foreclosed as a matter of law or rested on genuine issues of material fact that cannot be resolved on summary judgment. Whether because the indispensable-party defect is incurable, or because AWC's breach claims cannot as a matter of law support the relief ordered, this Court should render judgment dismissing AWC's claims in their entirety and thereby foreclose any further proceedings inconsistent with its opinion.

Dated: September 5, 2025

RESPECTFULLY SUBMITTED,

   /s/  Andre M. Stolier
RANDALL A. SMITH (No. 2117)
DYLAN T. LEACH (No. 35879)
ANDRE M. STOLIER (NO. 40063)
SMITH & FAWER, LLC
201 St. Charles Avenue, Suite 3702
New Orleans, Louisiana 70170
Telephone: (504) 525-2200
Facsimile:  (504) 525-2205

*Counsel For Defendant-Appellant,*
*The McDonnel Group, LLC*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME, TYPEFACE, AND TYPE-STYLE REQUIREMENTS

I HEREBY CERTIFY that this brief complies with the type-volume limitation of FED. R. APP. P. 27(d)(2)(A), because it contains 11,094 words, excluding the parts of the filing exempted by FED. R. APP. P. 32(f).  This brief also complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6), because this brief has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  September 5, 2025

                                        _/s/  Andre M. Stolier_
                                        ANDRE M. STOLIER

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 5, 2025, Defendant-Appellant, The McDonnel Group, LLC, caused the foregoing Original Brief of Defendant-Appellant, The McDonnel Group, LLC to be served on the following counsel of record for Plaintiff-Appellee, Archer Western Contractors, LLC, by electronically filing the same with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the Court's CM/ECF system, or by first class mail:

By CM/ECF:

DANIEL S. LUND III (No. 19014)
JEREMY T. GRABILL (No. 34924)
PATRICK M. JUDD (No. 40415)
PHELPS DUNBAR, LLP
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: (504) 566-1311
Facsimile:  (504) 568-9130

By First Class Mail:

CARTER B. REID
    *Admitted Pro Hac Vice*
DOMINICK P. WEINKAM
    *Admitted Pro Hac Vice*
HENRY O. TAYLOR, IV
    *Admitted Pro Hac Vice*
WATT, TIEDER, HOFFAR &
FITZGERALD, LLP
1765 Greensboro Station Place,
Suite 1000
McLean, Virginia 22102
Telephone: (703) 749-1000

Dated:  September 5, 2025

  /s/  *Andre M. Stolier*
ANDRE M. STOLIER

*Counsel for Defendant-Appellant,*
*The McDonnel Group, LLC*